DINAH WYATT, GARY WYATT AND HUNTER WYATT, PLAINTIFFS v. WALT DISNEY WORLD, CO., LAKE BUENA VISTA COMMUNITIES, INC. D/B/A DISNEY'S DIXIE LANDINGS RESORT, CLAIM VERIFICATION, INC. (CVI) AND DANIEL KEYS, PRIVATE INVESTIGATOR, DEFENDANTS

No. COA01-882

(Filed 2 July 2002)

**1. Appeal and Error— appealability—jurisdiction**

An interested party shall have the right of immediate appeal from an adverse ruling as to jurisdiction over the person or property.

**2. Jurisdiction— personal—process of challenge**

Upon a defendant's personal jurisdiction challenge, the plaintiff has the burden of proving prima facie that a statutory basis for jurisdiction exists. Where unverified allegations in the plaintiff's complaint meet plaintiff's initial burden and defendant does not contradict plaintiff's allegations, such allegations are accepted as true. However, when a defendant supplements its motion with affidavits or other supporting evidence, plaintiff cannot rest on the allegations of the complaint and must respond by setting forth specific facts showing that the court has jurisdiction. If the trial court's findings of fact resolving the defendant's jurisdictional challenge are not assigned as error, the court's findings are presumed to be correct.

**3. Jurisdiction— Florida accident—firm hired to investigate in North Carolina—independent contractor**

The trial court did not err by granting defendants' motion to dismiss a negligence action for lack of personal jurisdiction where plaintiffs maintained that the Florida defendants had engaged in acts in North Carolina giving rise to jurisdiction through the actions of a firm hired by defendants to investigate the accident, but the firm acted as an independent contractor and its actions are not attributable to defendants.

**4. Jurisdiction— Disney—separate companies—advertising in North Carolina—not sufficient for jurisdiction**

The trial court's findings of fact support its conclusion that Walt Disney World Company (WDWCO) and Walt Disney World Hospitality and Recreation Corporation (HRC) did not maintain such continuous and systematic contacts with North Carolina as

WYATT v. WALT DISNEY WORLD CO.

[151 N.C. App. 158 (2002)]

to satisfy general jurisdiction requirements. There were uncontradicted affidavits that WDWCO, HRC, and the Disney Store are separate entities and that WDWCO and HRC do not advertise or otherwise conduct business in North Carolina. While travel agents, retail stores, and advertisers might attempt to capitalize on the popularity of Disney World, these enterprises are entirely separate from WDWC and HRC. Moreover, plaintiffs' claims of tens of thousands of fliers advertising vacations at WDWCO do not, absent more, subject WDWC to jurisdiction in North Carolina.

**5. Jurisdiction— traditional notions of fair play and substantial justice—action in North Carolina against Disney**

The "traditional notions of fair play and substantial justice" test of *International Shoe Company v. Washington* did not dictate that personal jurisdiction should be exercised in North Carolina where plaintiff was injured at Disney World.

**6. Jurisdiction— action against Disney—burden of litigation**

Plaintiffs' assertions were not supported by competent evidence where plaintiffs contended that their burden of litigation in Florida would be severe while the burden on Walt Disney World and others to contest the suit in North Carolina would be marginal.

**7. Statute of Limitations— 1994 Disney World accident—1997 action—Florida statute of limitations**

Although plaintiffs in a negligence action against Disney and others contended that the Florida statute of limitations may have precluded filing the suit in Florida, the applicability of the Florida statute was not a valid consideration in light of the 1994 occurrence of the accident and the initiation of litigation in 1997.

**8. Jurisdiction— minimum contacts—Disney advertising**

Three federal district court decisions from Pennsylvania did not support plaintiffs' minimum contacts arguments in a suit against Walt Disney Company and others where those cases were in stark contrast to numerous rulings by state and federal courts in other jurisdictions.

Appeal by plaintiff-appellants from order entered 12 February 2001 by Judge Peter M. McHugh in Wilkes County Superior Court. Heard in the Court of Appeals 24 April 2002.

**WYATT v. WALT DISNEY WORLD CO.**

[151 N.C. App. 158 (2002)]

*Comerford & Britt, L.L.P., by W. Thompson Comerford, Jr. and Willardson & Lipscomb, L.L.P., by John S. Willardson, for plaintiff-appellants.*

*Smith & Moore, L.L.P., by J. Donald Cowan, Jr., and Richard A. Coughlin, for defendant-appellees.*

JOHN, Judge.

Plaintiffs Dinah Wyatt (Mrs. Wyatt), Gary Wyatt, and Hunter Wyatt (plaintiffs) appeal the trial court's 12 February 2001 order granting the N.C.G.S. § 1A-1, Rule 12 (b)(2) (2000), motion of defendants Disney World Co. (WDWCO) and Walt Disney World Hospitality & Recreation Corporation (HRC) (defendants) to dismiss plaintiffs' claims for lack of personal jurisdiction (defendants' motion to dismiss). For the reasons stated herein, we affirm the trial court.

Relevant factual and procedural information includes the following: In August 1994, plaintiffs, residents of Wilkes County, traveled to Walt Disney World Resort (the Resort) in Lake Buena Vista, Florida. Plaintiffs secured lodging at Dixie Landings, a hotel located at the Resort and owned at the time by Lake Buena Vista Communities, Inc., to which interest HRC subsequently succeeded. Shortly after plaintiffs' arrival at Dixie Landings, Mrs. Wyatt was injured in an accident involving the tram used by Dixie Landings to transport hotel customers from the registration desk to their rooms.

On 10 June 1997, plaintiffs filed the instant action against defendants in Wilkes County Superior Court alleging negligence and loss of consortium. Based upon the alleged conduct of defendants Claims Verifications, Inc. (CVI) and Daniel Keys (Keys) following CVI's retention by defendants to investigate the accident, plaintiffs also asserted claims of negligent and intentional infliction of emotional distress. Plaintiffs sought compensatory and punitive damages as well as counsel fees. The present appeal involves only WDWCO and HRC.

Defendants' motion to dismiss was filed 18 August 1999, and heard 22 January 2001. The trial court granted the motion in a 12 February 2001 order which recited, *inter alia*, the following findings of fact:

1. WDWCO is a Florida corporation qualified to do business and doing business in the State of Florida. Its principal business activities consist of ownership and operation of . . . an entertainment complex located in Orange County, Florida known as the WALT

DISNEY WORLD Resort. . . . It does not own or operate Dixie Landings Resort . . . which is the hotel at which plaintiff Dinah Wyatt allegedly sustained her injury.

2. WDWCO is not qualified to do business in the State of North Carolina, . . . has no office or place of business in North Carolina and has no officers, agents or employees in the State of North Carolina. . . . WDWCO . . . [owns no] real property in North Carolina. It has no assets in North Carolina. All advertising for the WALT DISNEY WORLD Resort outside of Florida is purchased and placed on a regional or national basis, by entities other than WDWCO or HRC, and is not targeted to North Carolina. . . .

3. HRC is a Florida Corporation qualified to do business and doing business in the State of Florida . . . [which operates] a facility known as the Disney's Dixie Landings Resort located in Orange County, Florida. . . . HRC is not qualified to do business in the State of North Carolina. . . . has no office or place of business in North Carolina and has no officers, agents or employees in the State of North Carolina. . . . HRC . . . [does not] own any real property in North Carolina. It has no assets in North Carolina. . . . HRC does not advertise or market itself outside the State of Florida. All advertising for the Disney's Dixie Landings Resort is acquired and placed on a regional or national basis, by entities other than HRC, and is not targeted to North Carolina. . . .

4. HRC and WDWCO are separate and independent companies, and neither has an ownership interest in the other. . . . Furthermore, neither WDWCO nor HRC owns, operates or has any interest in The Disney Store, Inc., or any store operated by The Disney Store, Inc. In North Carolina. . . .

5. All advertising for the various properties within the WALT DISNEY WORLD Resort outside of Florida is created on a regional or national basis and is not targeted specifically to North Carolina. . . .

. . . .

9. Pursuant to a services agreement, WDWCO hired CVI . . . in Florida. CVI was hired to investigate plaintiffs personal injury claims that arose out of an incident that occurred in Florida.

10. CVI was an independent contractor retained by WDWCO. Keys was an employee of CVI. Neither WDWCO nor HRC

instructed either CVI or Keys as to the manner or method by which CVI or Keys was to perform the investigation. Keys investigation involved only conducting surveillance of plaintiff Dinah Wyatt in public.

. . . .

12. All alleged conduct of defendants WDWCO and HRC allegedly giving rise to plaintiffs' claims occurred in Florida.

13. Neither WDWCO nor HRC has maintained continuous and systematic contacts with North Carolina.

14. Neither WDWCO nor HRC purposefully directed its activities toward North Carolina or availed itself of the privilege of conducting activities within North Carolina, thus invoking the benefits and protection of its laws.

15. Neither WDWCO nor HRC could foresee being hailed into court in North Carolina for the claims set forth in plaintiffs' Complaint based on the evidence before the Court.

16. Any other contact of WDWCO or HRC with North Carolina alleged by plaintiffs [is] unsupported by competent evidence or, based on the competent evidence before the Court, are not attributable to either WDWCO or HRC.

Based upon its findings of fact, the trial court concluded as a matter of law that neither WDWCO nor HRC were subject to personal jurisdiction in North Carolina in the instant case. All plaintiffs' claims against WDWCO and HRC were thereupon dismissed for lack of personal jurisdiction. Plaintiffs appeal.

[1] We observe initially that

[a]ny interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant[.]

N.C.G.S. § 1-277(b) (2000). Plaintiffs' appeal is thus properly before this Court.

[2] Upon a defendant's personal jurisdiction challenge, the plaintiff has "the burden of proving *prima facie* that a statutory basis for jurisdiction exists." *Godwin v. Walls*, 118 N.C. App. 341, 347, 455 S.E.2d 473, 479, *disc. review allowed*, 341 N.C. 419, 461 S.E.2d 757 (1995)

**WYATT v. WALT DISNEY WORLD CO.**

[151 N.C. App. 158 (2002)]

(citation omitted). Where unverified allegations in the plaintiff's complaint meet plaintiff's

> initial burden of proving the existence of jurisdiction . . . and defendant . . . [does] not contradict plaintiff's allegations in [its] sworn affidavit,

*Bush v. BASF Wyandotte Corp.*, 64 N.C. App. 41, 45, 306 S.E.2d 562, 565 (1983), such allegations are accepted as true and deemed controlling, *id.* However, when a defendant supplements its motion with affidavits or other supporting evidence, the allegations of the plaintiff's complaint "can no longer be taken as true or controlling and plaintiff[] cannot rest on the allegations of the complaint," *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615-16, 532 S.E.2d 215, 218, *disc. review denied*, 353 N.C. 261, 546 S.E.2d 90 (2000) (citation omitted), but must respond "by affidavit or otherwise . . . set[ting] forth specific facts showing that the court has jurisdiction." *Id.*

Further,

> [t]he determination of whether jurisdiction is statutorily and constitutionally permissible due to contact with the forum is a question of fact. The standard of [appellate] review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court.

*Replacements, Ltd. v. MidweSterling*, 133 N.C. App. 139, 140-41, 515 S.E.2d 46, 48 (1999) (citing *Chadbourn, Inc. v. Katz*, 285 N.C. 700, 208 S.E.2d 676 (1974)). Moreover, if the trial court's findings of fact resolving the defendant's jurisdictional challenge "are not assigned as error, the court's findings are 'presumed to be correct,'" *Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998) (citation omitted); *see also Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 591, 525 S.E.2d 481, 484 (2000) ("contested finding of fact must be separately assigned as error, and the failure to do so results in a waiver of the right to challenge the sufficiency of the evidence to support the finding" on appeal).

In the instant case, plaintiffs introduced no evidence or affidavits at the hearing on defendants' motion nor have plaintiffs assigned error to any of the trial court's findings of fact.

WYATT v. WALT DISNEY WORLD CO.

[151 N.C. App. 158 (2002)]

In their single assignment of error, plaintiffs essentially assert the presence of federal due process requirements for assumption of personal jurisdiction, *cf. Styleco, Inc. v. Stoutco, Inc.* 62 N.C. App. 525, 526, 302 S.E.2d 888, 889, *disc. review denied*, 309 N.C. 825, 310 S.E.2d 358 (1983) (appeal of adverse ruling on issue of personal jurisdiction properly directed at determination of whether North Carolina statutes permit our courts "to entertain this action against defendant[s], and, *if so*, whether this exercise of jurisdiction violates due process" (emphasis added)), and only cursorily address the applicability of North Carolina statutory authority, commonly referred to as our "long-arm statute," *Dillon v. Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977). Defendants have responded in kind, and we therefore likewise confine our discussion to this issue. *See* N.C.R. App. P. 10(a) (Court's review "confined to a consideration of those assignments of error set out in the record on appeal"), N.C.R. App. P. 28(b)(5) ("Assignments of error . . . [for] which no reason or argument is stated or authority cited, will be taken as abandoned."), and *Sonek v. Sonek*, 105 N.C. App. 247, 251, 412 S.E.2d 917, 920, *disc. review allowed*, 331 N.C. 287, 417 S.E.2d 255 (1992) (where "issue . . . not raised by either of the parties on appeal," appellate court is "without jurisdiction to address [issue]").

Plaintiffs maintain the trial court erred by granting defendants' motion to dismiss in that

> defendants-appellees have continuous and systematic contacts with North Carolina and the cause of action directly relates to one of defendants-appellees significant contacts with North Carolina.

Plaintiffs' argument is unfounded.

> Under our 'long arm' statute, North Carolina courts may obtain personal jurisdiction over a non-resident defendant to the full extent permitted by the Due Process Clause of the United States Constitution."

*Saxon v. Smith*, 125 N.C. App. 163, 173, 479 S.E.2d 788, 794 (1997) (citations omitted). Years ago, the United States Supreme Court articulated a two part federal due process test for personal jurisdiction as follows:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such

WYATT v. WALT DISNEY WORLD CO.

[151 N.C. App. 158 (2002)]

that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

*International Shoe Company v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945) (citations omitted). *International Shoe* remains the leading authority on personal jurisdiction and decisions of our Courts have adhered to its principles. *See, e.g., Filmar Racing, Inc. v. Stewart*, 141 N.C. App. 668, 541 S.E.2d 733 (2001) (applying *International Shoe* standard to issue of personal jurisdiction).

In addition,

[t]he United States Supreme Court has noted two types of long-arm jurisdiction: "specific jurisdiction," where the controversy arises out of the defendant's contacts with the forum state, and "general jurisdiction," where the controversy is unrelated to the defendant's activities within the forum, but there are "sufficient contacts" between the forum and the defendant.

*Replacements, Ltd. v. MidweSterling*, 133 N.C. App. 139, 143, 515 S.E.2d 46, 49-50 (1999) (quoting *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 411 (1984)).

Specific jurisdiction exists if the defendant has purposely directed its activities toward the resident of the forum and the cause of action relates to such activities. This inquiry focuses on whether the defendant "purposefully availed itself of the privilege of conducting activities in-state, thereby invoking the benefits and protections of the forum state's laws," and jurisdiction may be proper even if the defendant has never set foot in the forum state. General jurisdiction exists where the defendant has continuous and systematic contacts with the forum state, even though those contacts do not relate to the cause of action.

*Frisella v. Transoceanic Cable Ship Co.*, 181 F. Supp.2d 644, 647 (E.D.La. 2002).

[3] Plaintiffs herein assert the presence of both general and specific jurisdiction. Regarding the latter, plaintiffs maintain North Carolina has specific jurisdiction because

the tortious acts that form the basis for Plaintiffs' emotional distress claims were committed in North Carolina by Daniel Keys, a private investigator working on behalf of WDWCO and HRC.

WYATT v. WALT DISNEY WORLD CO.

[151 N.C. App. 158 (2002)]

"By retaining Keys," plaintiffs continue, defendants risked liability for his actions and thereby "should have reasonably expected that they could be haled into court in North Carolina." According to plaintiffs, therefore, defendants, through CVI and its employee Keys, engaged in acts within North Carolina that gave rise to the instant action, thereby establishing specific jurisdiction.

However, plaintiffs' argument assumes that the alleged actions of CVI and Keys in North Carolina may be imputed to defendants. In this regard, the trial court's findings of fact nine, ten and twelve, unchallenged by plaintiffs and thus presumed to be correct, *see Inspirational Network, Inc. v. Combs*, 131 N.C. App. at 235, 506 S.E.2d at 758, establish that CVI, a Florida company, was employed by defendants in Florida, that Keys was solely the employee of CVI, that neither WDWCO nor HRC instructed or supervised CVI and Keys as to the manner in which their investigation was to be conducted, that defendants did not engage in activities outside the state of Florida and that CVI, and thus its employee Keys, acted as an independent contractor rather than as an agent of defendants.

Actions of an independent contractor are not attributable to the party hiring it, and thus do not, without more, establish jurisdiction. *Miller v. Piedmont Steam Co.*, 137 N.C. App. 520, 528 S.E.2d 923, *disc. review denied*, 352 N.C. 590, 544 S.E.2d 782 (2000) (no agency relationship between franchiser and independent contractor/ franchisee where franchiser did not have any control over franchisee's day to day operations).

> The critical element of an agency relationship is the right of control, and the principal must have the right to control both the means and the details of the process by which the agent is to accomplish his task in order for an agency relationship to exist. Absent proof of the right to control, only an independent contractor relationship is established. The actions of an independent contractor by themselves are not sufficient to subject a nonresident corporation to the jurisdiction of a forum.

*Williamson v. Petrosakh Joint Stock Co.*, 952 F.Supp. 495, 498 (S.D.Tex. 1997); *see also Stover v. O'Connell Associates, Inc.*, 84 F.3d 132 (4th Cir. 1996), *cert. denied*, 519 U.S. 983, 136 L. Ed. 2d 334 (1996) (New York defendant's hiring of Maryland investigator insufficient to create personal jurisdiction in Maryland where defendant did not direct activities of investigator).

Plaintiffs direct our attention to nothing in the instant record which raises an issue of fact regarding defendants' retention of control over the manner in which CVI and Keys investigated the accident at issue. Notwithstanding, plaintiffs point to the case of *Calder v. Jones*, 465 U.S. 783, 79 L. Ed. 2d 804 (1984) as supportive. We conclude that plaintiff's reliance upon *Calder* is unavailing.

In *Calder*, a Florida newspaper was held subject to suit in California. *Id.* at 791, 79 L. Ed.2d at 813. The newspaper published approximately six hundred thousand copies of an allegedly defamatory article, researched from California sources, about a California resident. *Id.* The Court held

> jurisdiction over petitioners in California [wa]s proper because of their intentional conduct in Florida calculated to cause injury to respondent in California.

*Id.* By contrast, WDWCO and HRC herein are Florida companies which hired a Florida investigation firm to investigate a personal injury claim arising out of an accident in the state of Florida.

Interestingly, we note the plaintiffs in *Stover* similarly relied upon *Calder*. *See Stover*, 84 F.3d at 135. The Fourth Circuit ruled *Calder* was inapplicable and that the Maryland court had no personal jurisdiction over a New York investigation firm which telephoned from New York to hire a Maryland company to investigate a Maryland resident, but exercised no control over the investigation. *Id.* at 135. Indeed, the instant facts involving a hiring in Florida to investigate a Florida accident are further removed from the circumstances in *Calder* than the facts in *Stover*.

Moreover,

> [d]ecisions by the federal courts as to the construction and effect of the due process clause of the United States Constitution are binding on this Court[.]

*McNeill v. Harnett County*, 327 N.C. 552, 563, 398 S.E.2d 475, 481 (1990). The Fourth Circuit's opinion in *Stover* is directly on point, and its reasoning is applicable to the present case.

In short, the trial court's findings of fact support its conclusion that specific personal jurisdiction could not be exercised over defendants either based upon their hiring of CVI or upon the activities of Keys in North Carolina on behalf of CVI. Plaintiffs' arguments to the contrary are therefore unavailing.

**[4]** Plaintiffs also maintain that assumption of general personal jurisdiction over defendants might properly be exercised by the North Carolina court. Again, we disagree.

General jurisdiction over a party is proper when that party has engaged in "continuous and systematic contacts" with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. at 415, 80 L. Ed. 2d at 411. Plaintiffs assert a general relationship among various commercial enterprises with some connection to WDWCO, including television and print advertising, employee recruitment, sales of Disney related products, travel agencies, etc. In effect, plaintiffs invite this Court to treat the entire "Disney empire," and all who profit from the existence of WDWCO, as one entity for purposes of personal jurisdiction.

However, we may not do so absent proof that the businesses are parts of the same whole. *See Sigros v. Walt Disney World Co.*, 129 F. Supp.2d 56, 70 (D. Mass. 2001) ("Jurisdiction over HRC will lie, then, only if the activities of HRC are confusingly intermingled with those of Disney so as to warrant imputing the established contacts between Disney/WDA and Massachusetts to HRC itself."); *Ash v. Burnham Corp.*, 80 N.C. App. 459, 462, 343 S.E.2d 2, 4, *aff'd*, 318 N.C. 504, 349 S.E.2d 579 (1986) (where "subsidiary's presence in [N.C.] is primarily for . . . its own business and the subsidiary has preserved some semblance of independence from [defendant], jurisdiction over [defendant] may not be acquired on the basis of the local activities of the subsidiary"); and *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 619, 532 S.E.2d 215, 220 (2000) (where there is "no evidence of a legal relationship between [the two defendants], plaintiffs may not rely upon [one defendant's] activities within this State to establish the requisite minimum contacts").

In the trial court, defendants introduced uncontradicted affidavits from vice presidents of HRC and WDWCO as well as from the president of "The Disney Store" generally establishing that the three are separate entities and that WDWCO and HRC do not advertise or otherwise conduct business in North Carolina. *See Bruggeman, id.* at 615-16, 532 S.E.2d at 218 (when defendant supplements motion challenging personal jurisdiction with affidavits or other evidence, the allegations in the complaint "can no longer be taken as true or controlling and plaintiff[] cannot rest" upon those allegations).

In addition, the trial court's findings of fact number two, three, four, thirteen, fourteen, fifteen and sixteen, supported by the above-

mentioned evidence, *see Replacements, Ltd. v. MidweSterling*, 133
N.C. App. at 140-41, 515 S.E.2d at 48 (on appeal of order determining
personal jurisdiction, "this Court must affirm the order of the trial
court" if trial court's findings of fact are supported by competent evi-
dence), and unchallenged by plaintiffs, *see Bruggeman v. Meditrust
Acquisition Co.*, 138 N.C. App. at 615-16, 532 S.E.2d at 218, establish
that, although various travel agents, retail stores, and advertisers, *et.
al*, might attempt to capitalize on the popularity of "Disney World,"
these enterprises are entirely separate from WDWCO and HRC.
Moreover, plaintiffs' claims of "tens of thousands of fliers" advertis-
ing vacations at WDWCO do not, absent more, subject WDWCO to
jurisdiction in North Carolina. *See CEM Corp. v. Personal Chemistry
AB*, 192 F. Supp.2d 438, 441 (W.D.N.C. 2002) ("advertisements and
solicitations not targeted to the forum, but . . . that subsequently find
their way into the forum, are entirely insufficient to support a finding
of general jurisdiction, even when coupled with *de minimus* sales in
the forum"); and *Schenck v. Walt Disney Co.*, 742 F.Supp. 838, 841
(S.D.N.Y. 1990) (although WDW solicits business "through advertising
and brochures," engages "athletes at major sporting events . . . to
advertise for Walt Disney World," and "recruits students from New
York Colleges and Universities," these activities "do not amount to
anything more than mere solicitation by WDW").

The trial court's findings of fact in turn support its conclusion
that WDWCO and HRC did not maintain such "continuous and
systematic" contacts with North Carolina as to satisfy general per-
sonal jurisdiction requirements. We therefore reject plaintiffs'
second argument.

[5] Finally, plaintiffs assert that the second part of the *International
Shoe* test, *i.e.*, that "traditional notions of fair play and substantial
justice," *International Shoe Company v. Washington*, 326 U.S. at
316, 90 L. Ed. 2d at 102, dictate that personal jurisdiction should be
exercised in North Carolina, was satisfied here. Although our resolu-
tion of the "minimum contacts" issue against plaintiffs is dispositive,
*see id.* (in order for a defendant to be subjected to personal jurisdic-
tion, due process requires that it have certain "minimum contacts"
with the forum state), we also find plaintiffs' concluding contention
unconvincing.

[6] Plaintiffs complain that the burden of litigation upon them in
Florida would be severe, while the burden upon defendants to con-
test plaintiffs' suit in North Carolina would be "marginal." However,

these assertions are unsupported by competent evidence in the record. In addition, plaintiffs have failed to assign error to the trial court's determination that the exercise of personal jurisdiction over WDWCO and HRC for the claims set forth in plaintiffs' complaint would be unfair. *See Inspirational Network v. Combs*, 131 N.C. App. at 235, 506 S.E.2d at 758.

**[7]** Plaintiffs further argue that the applicable Florida statute of limitations may have elapsed, thereby precluding their filing of suit in that jurisdiction. In light of the 1994 occurrence date of the accident at issue and the initiation of litigation in 1997, we conclude that potential applicability of the Florida statute of limitations does not constitute a valid consideration. *See Trexler v. Pollock*, 135 N.C. App. 601, 607, 522 S.E.2d 84, 88 (1999), *cert. denied*, 351 N.C. 480, 543 S.E.2d 509 (2000) ("With the passage of time, memories fade or fail altogether, witnesses die or move away, evidence is lost or destroyed; and it is for these reasons, and others, that statutes of limitations are inflexible and unyielding and operate without regard to the merits of a cause of action.") (citation omitted).

**[8]** Plaintiffs cite three federal district court decisions from Pennsylvania as sustaining their position. *See Weintraub v. Walt Disney World Co.*, 825 F. Supp. 717, 722 (E.D. Pa. 1993); *Cresswell v. Walt Disney Productions*, 677 F. Supp. 284, 285 (M.D. Pa. 1987); *Gavigan v. Walt Disney World Co.*, 630 F. Supp. 148, 152, *on reconsideration*, 646 F. Supp. 786 (E.D. Pa. 1986). However, even in 1993, when the last of the cited cases was decided,

> [t]hree [other] recent Pennsylvania District Court decisions [had] held that advertisements by Disney World targeted at the Pennsylvania market were not 'continuous and systematic' contacts, and [that] to rely on that evidence to support general jurisdiction would be an affront to Due Process.

*Capizanno v. Walt Disney World Co.*, 826 F.Supp. 53, 56 (D.R.I.1993) (referring to the decisions in *Jennings v. Walt Disney World, Inc.*, Civ. A. No. 92-2764, 1992 WL 188374 (E.D.Pa. Jul 27, 1992 ), *Schulman v. Walt Disney World Co.*, Civ. A. No. 91-5259, 1992 WL 38390 (E.D.Pa. Feb 25, 1992), and *Cunningham v. Walt Disney World Co.*, Civ. A. No. 90-6164, 1991 WL 22062 (E.D.Pa. Feb 19, 1991)); *see also Whalen v. Walt Disney World Co.*, 274 Pa.Super. 246, 252, 418 A.2d 389, 392 (1980) (Pennsylvania courts lack personal jurisdiction over WDWCO "because Disney's business activities in Pennsylvania are too indirect to be considered "continuous and substantial").

Moreover, the Pennsylvania cases cited by plaintiff stand in stark contrast to contrary rulings by numerous state and federal courts in other jurisdictions. *See, e.g., Capizanno v. Walt Disney World Co.*, 826 F.Supp. 53, 55 (D.R.I.1993) ("merely having substantial contacts with a forum cannot provide a basis for general jurisdiction consistent with Due Process"); *Giangola v. Walt Disney World Co.*, 753 F.Supp. 148, 156 (D.N.J.1990) (personal jurisdiction not proper notwithstanding plaintiff's reliance upon advertisements placed by defendant in local newspapers); *Schenk v. Walt Disney Company*, 742 F.Supp. 838 (S.D.N.Y.1990); *Grill v. Walt Disney Co.*, 683 F. Supp. 66, 69 (S.D.N.Y. 1988) ("Disney World Co. [does not] engage[] in activities in New York beyond the 'mere solicitation' of business"); *Disney Enterprises, Inc. v. Esprit Finance, Inc.*, 981 S.W.2d 25, 30 (Tex.App.-San Antonio 1998) ("[Plaintiff's] contention that Disney is amenable to suit in Texas under an agency theory of vicarious liability does not find support in the record").

In sum, for the reasons discussed above, the trial court did not err in granting defendants' motion to dismiss for lack of personal jurisdiction, and the order of the trial court is therefore affirmed.

Affirmed.

Judges TIMMONS-GOODSON and McCULLOUGH concur.