Herrera v. Charlotte School of Law, LLC, 2018 NCBC 15.

STATE OF NORTH CAROLINA
MECKLENBURG COUNTY

DANIEL HERRERA; TALECE
HUNTER; ARIQUE DROSS, III;
STACEY KING; DAWN PATTERSON;
WILL HODGE; JOELLE BATTAGLIA;
PORTIA DARBY HAWKINS; JAMES
HOWE; JULES DOSSOU
AZATASSOU; MAURICE RUSSELL;
KIMBERLY JOHNSON; JENNIFER
POLSKY; and TARAH FRIEDMAN,

Plaintiffs,

v.

CHARLOTTE SCHOOL OF LAW, LLC;
INFILAW CORPORATION; INFILAW
HOLDING, LLC; JAY CONISON;
CHIDI OGENE; DONALD E. LIVELY;
STERLING CAPITAL PARTNERS,
L.P.; STERLING CAPITAL
PARTNERS GMBH & CO. KG; and
RICK INATOME,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 1965 [MASTER FILE]
Related Cases: 17 CVS 4265; 17 CVS 5870;
17 CVS 6749; 17 CVS 7851

**ORDER & OPINION GRANTING
DEFENDANTS STERLING CAPITAL
PARTNERS, L.P. AND STERLING
CAPITAL PARTNERS GmbH & Co.
KG's MOTION TO DISMISS**

1.      THIS MATTER is before the Court on the Motion to Dismiss by

Defendants Sterling Capital Partners, L.P. and Sterling Capital Partners GmbH &

Co. KG ("Motion") filed in: *Herrera v. Charlotte School of Law, LLC*, 17 CVS 1965 (the

"Herrera Action"); *Robertson v. Charlotte School of Law, LLC*, 17 CVS 4265 (the

"Robertson Action"); *Mosley v. Charlotte School of Law, LLC*, 17 CVS 5870 (the

"Mosley Action"); *Merritt v. Charlotte School of Law, LLC*, 17 CVS 6749 (the "Merritt

Action"); and *Frisby v. Charlotte School of Law, LLC*, 17 CVS 7851 (the "Frisby

Action"), (collectively the "Actions"). The Motion seeks to dismiss all claims against Defendants Sterling Capital Partners, L.P. and Sterling Capital Partners GmbH & Co. KG (the "Sterling Defendants") pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). For the reasons discussed below, the Motion is GRANTED pursuant to Rule 12(b)(2), the Motion pursuant to Rule 12(b)(6) is MOOT, and Plaintiffs' actions against the Sterling Defendants are DISMISSED.

> *The Law Offices of James Scott Farrin, by Gary W. Jackson, Hoyt G. Tessener, James S. Farrin, Christopher R. Bagley, Sidney B. Figel, and Stefanie Rodriguez, and The Law Offices of Jason E. Taylor, P.C. by Lawrence Serbin, for Plaintiffs.*

> *Robinson Bradshaw & Hinson, P.A., by Robert E. Harrington and Adam Doerr, and Ropes & Gray, LLP by William L. Roberts (pro hac vice), Nicholas Berg (pro hac vice), and Peter L. Welsh (pro hac vice) for Defendants Sterling Capital Partners, L.P. and Sterling Capital Partners GmbH & Co. KG.*

Gale, Chief Judge.

## I. INTRODUCTION

2. These actions are the first of several actions brought by students who attended Charlotte School of Law ("CSL") prior to its closure. Plaintiffs assert, and Defendants deny, that CSL, as well as the companies that owned, operated, managed, or were otherwise associated with CSL, conspired to fraudulently represent CSL as a successful law school that provided a rigorous legal education and conformed with the American Bar Association ("ABA") accreditation standards.

3. The Sterling Defendants challenge both this Court's personal jurisdiction and the merits of Plaintiffs' claims. As the Court finds that it lacks

jurisdiction over the Sterling Defendants, it does not address whether Plaintiffs sufficiently stated a claim against the Sterling Defendants.

4.     By separate Order, the Court has deferred ruling on motions by other Defendants, pending the completion of limited jurisdictional discovery.

## II.     THE PARTIES

5.     Counsel for Plaintiffs continue to file actions on behalf of former CSL students.  At the time of this Order & Opinion, there are eighty-four cases assigned to this Court, representing claims of 147 former CSL students.  The five actions captioned above were the first cases initiated and were the only cases pending when the Sterling Defendants filed the Motion.

## A.     <u>The Initial Plaintiffs</u>

6.     Plaintiffs Daniel Herrera, Talece Hunter, Arique Dross, III, Stacey King, Dawn Patterson, Will Hodge, Joelle Battaglia, Portia Darby Hawkins, James Howe, Jules Dossou Azatassou, Maurice Russell, Kimberly Johnson, Jennifer Polsky, and Tarah Friedman (collectively, "Herrera Plaintiffs") attended CSL at some point during 2015 or 2016.  (Third Am. Compl. ¶¶ 30–43, ECF No. 18.)

7.     Plaintiffs Brianna Robertson, Asia Brown, Matthew Yoo, Gary Leto, China McGee, Jody Lyles, Derasean Adegbola, Justin Knoll, Russell Martin, and Lauren Yuhas (collectively, "Robertson Plaintiffs") attended CSL at some point during 2015 or 2016.  (First Am. Compl. ¶¶ 30–39, ECF No. 2.)

8.     Plaintiffs Ephraim Mosley, Yolanda Davis, Ryan Love, Shaun Malone, William Segers, III, Fabba Kijera, Michael Perez, Nichole Burkhart, Jasmine Smith,

Lauren Tatro, Rachel Bryan, Kabir Buhari, Cierra Blaher, Douglas Walker, Edilia Zuniga, and Courtenay Sellers (collectively, "Mosley Plaintiffs") attended CSL at some point during 2014, 2015, or 2016. (Compl. ¶¶ 30–45, ECF No. 2.)

9. Plaintiffs Brittaney Merritt, Elle Pappas, Ashley Good, Lacey Webb, Brent Finnell, Sarah Speed, Adriana Urtubey, Tyler Spillman, Jalen Sanders, and Shereka Banks (collectively, "Merritt Plaintiffs") also attended CSL at some point during 2014, 2015, or 2016. (Compl. ¶¶ 30–39, ECF No. 2.)

10. Plaintiffs Patience Frisby, Charlie Carpenter, Brandon Potter, Erica Bennerman, Melissa Grisewood, Kathleen Pasquarella, Demetria Braden, Jamal Williams, Annabelle Pardo, Omar Bashi, Jasmin Brooks, Ashlee McGinnas, Rachel Gainey, Ashlin Massey, Steven Burleson, Mary Welch, and Charles Hornack (collectively, "Frisby Plaintiffs") also attended CSL at some point during 2014, 2015, or 2016. (Compl. ¶¶ 30–46, ECF No. 2.)

**B.** **The Sterling Defendants**

11. Sterling Partners is the trade name for Sterling Fund Management, LLC ("SFM"), and the private equity funds SFM manages. (Epstein Aff. ¶¶ 1–2, ECF No. 31.) SFM is a Delaware limited-liability company with its principal place of business in Chicago, Illinois, and has offices in Baltimore, Maryland, and Miami, Florida. (Epstein Aff. ¶ 3.) SFM is not a party to the Actions.

12. SFM operates and manages eight equity funds, which collectively hold investments in over twenty companies. (Epstein Aff. ¶ 2.) SFM's equity funds and

the portfolio companies are all separate legal entities with different ownership. (Epstein Aff. ¶ 2.) The Sterling Defendants are two of the equity funds SFM manages.

13. Defendant Sterling Capital Partners, L.P. is a Delaware limited partnership with its principal place of business in Chicago, Illinois. (Epstein Aff. ¶ 4.) Defendant Sterling Capital Partners GmbH & Co. KG is a German limited partnership with its principal place of business in Chicago, Illinois. (Epstein Aff. ¶ 4.)

14. The Sterling Defendants are both members of Defendant InfiLaw Holding, LLC ("Holding"). (Epstein Aff. ¶ 4.)

## C. Other Defendants

15. Holding is a Delaware limited-liability company with its principal place of business in Florida. (Epstein Aff. ¶ 4.) Holding owns Defendant InfiLaw Corporation ("InfiLaw"). (Epstein Aff. ¶ 5.)

16. InfiLaw is incorporated in Delaware with its principal place of business in Naples, Florida and is licensed to do business in North Carolina. (Third Am. Compl. ¶ 347.) InfiLaw owns three for-profit law schools, including CSL. (*See* Third Am. Comp. ¶ 350; Epstein Aff. ¶ 5.)

17. CSL is a Delaware limited-liability company with its principal place of business in Charlotte, North Carolina. (Third Am. Compl. ¶ 344.) CSL was founded in 2006 as a for-profit law school and was accredited by the ABA in 2011. (Third Am. Compl. ¶ 345.) CSL ceased operations in August 2017.

18. Neither the Sterling Defendants nor SFM have an ownership interest in InfiLaw or CSL. (Epstein Aff. ¶ 6.)

19.     Defendant Jay Conison ("Conison") is a citizen and resident of Charlotte, North Carolina and was CSL's Dean from 2013 until it closed.  (Third Am. Compl. ¶ 351.)

20.     Defendant Chide Ogene ("Ogene") is a citizen and resident of Charlotte, North Carolina and was CSL's President from 2015 until it closed.  (Third Am. Compl. ¶ 353.)

21.     Defendant Don Lively ("Lively") is a resident of Phoenix, Arizona and was CSL's President from 2011–2014.  (Third Am. Compl. ¶ 354.)

22.     Defendant Rick Inatome ("Inatome") is the Chief Executive Officer of InfiLaw and Holding.  (Third Am. Compl. ¶ 356.)  Plaintiffs initially alleged that Inatome is the Managing Partner of the Sterling Defendants, (*see* Third Am. Compl. ¶ 356), but Plaintiffs' evidence states that Inatome, at some unspecified time, was the Managing Director of Sterling Partners, not the Sterling Defendants.  (*See* Pls.' Mem. Law Opp'n Sterling Defs.' Mot. Dismiss Ex. P, at 66, ECF No. 53.7 (listing Managing Director of Sterling Partners on a slide, which appears to provide Inatome's employment history).)

23.     The Court refers to Defendants Holding, InfiLaw, CSL , Conison, Ogene, Lively, and Inatome collectively as the "CSL Defendants."

### III.     PROCEDURAL HISTORY

24.     The Herrera Action was initiated on January 31, 2017, and the Second Amended Complaint was filed on February 20, 2017.

25.    The Robertson Action was initiated on March 10, 2017, and the First Amended Complaint was filed on March 28, 2017.

26.    The Sterling Defendants and the CSL Defendants each filed a Notice of Designation in the Herrera Action on March 24, 2017.  The Herrera Action was designated as a mandatory complex business case by order of Chief Justice Martin on March 27, 2017, and assigned to the undersigned on March 29, 2017.

27.    The Herrera Plaintiffs filed their Third Amended Complaint on March 28, 2017, asserting claims for: (1) unfair or deceptive trade practices, (2) breach of contract, (3) breach of covenant of good faith and fair dealing, (4) fraud, (5) constructive fraud, (6) intentional misrepresentation, (7) negligent misrepresentation, (8) unjust enrichment, and (9) punitive damages.  (*See* Third Am. Compl. ¶¶ 393–434.)

28.    The Robertson Action was designated as a mandatory complex business case by order of Chief Justice Martin and assigned to the undersigned on April 18, 2017.

29.    The Mosley Action was initiated on March 28, 2017, the Merritt Action was initiated on April 13, 2017, and the Frisby Action was initiated on May 1, 2017.

30.    The Mosley Action, Merritt Action, and Frisby Action were designated as mandatory complex business cases by order of Chief Justice Martin on June 12, 2017, and assigned to the undersigned on June 13, 2017.

31.    On June 16, 2017, the Sterling Defendants moved to dismiss the Actions pursuant to Rule 12(b)(2) and Rule 12(b)(6).

32. On June 16, 2017, the CSL Defendants collectively moved to dismiss the Actions pursuant to Rule 12(b)(6). Holding, Lively, and Inatome separately moved to dismiss the Actions pursuant to Rule 12(b)(2). These motions are not addressed by this Order & Opinion.

33. The Court, with consent of the parties, entered the Stipulation and Case Management Order No. 1 on June 21, 2017, which provides that subsequently filed actions arising out of the same or substantially similar events will be treated as mandatory complex business cases, assigned to the undersigned, and referred to as "Related Actions." (Stipulation and Case Management Order No. 1, ¶ 2, ECF. No. 38.) The Court designated the Herrera Action as the master file and the Herrera Action's Third Amended Complaint as the operative complaint.

34. At present, there are a total of eighty-four actions assigned to the Court, representing claims of 147 former CSL students.

35. The Court heard arguments on Defendants' 12(b)(2) and 12(b)(6) motions on September 12, 2017. Plaintiffs requested the right to pursue jurisdictional discovery before the Court ruled on Defendants' motions. The Court concludes that no such discovery is necessary to resolve the Sterling Defendants' Rule 12(b)(2) Motion and that the Motion is now ripe for determination.

## IV. GENERAL FACTUAL BACKGROUND

36. For purposes of this Motion only, the Court accepts Plaintiffs' allegations as true, except for those contested by the Sterling Defendants' affidavit

filed in support of their Motion. The following are general background facts. The Court will address contested facts in the Analysis Section of this Order & Opinion.

37. CSL opened in Charlotte, North Carolina as a for-profit law school in 2006 and was accredited by the ABA in 2011. (Third Am. Compl. ¶ 3.)

38. At the time the Actions were commenced, CSL had 700 students enrolled, making it the largest law school in North Carolina. (Third Am. Compl. ¶ 346.) CSL advertised that it had "a rigorous curriculum [that] [was] created to ensure that [its] students are equipped with practical skills that will allow them to thrive in a professional setting." (Third Am. Compl. ¶ 5 (first alteration in original).)

39. In March 2014, the ABA conducted on-site evaluations as a part of the three-year interval evaluation regarding CSL's accreditation status. (Third Am. Compl. ¶ 374.)

40. In January 2015, the ABA issued a report stating that "it had 'reason to believe' that CSL had 'not demonstrated compliance' with certain ABA standards," specifically standards 301(a), 501(a) and 501(b), which require a law school to "maintain a rigorous program of legal education that prepares its students . . . for admission to the bar," and "maintain sound admission policies and practices consistent with the [s]tandards." (Third Am. Compl. ¶ 376.) The ABA then requested additional information from CSL. (Third Am. Compl. ¶ 376.)

41. On February 3, 2016, and again in July 2016, the ABA issued reports stating that CSL was not in compliance with ABA standards 301(a), 501(a), and 501(b). (Third Am. Compl. ¶¶ 379–80.) The ABA noted that the issues of non-

compliance with such standards were "substantial and . . . persistent." (Third Am. Compl. ¶ 380.) CSL appealed the ABA's July 2016 decision and a hearing was held on October 21, 2016. (Third Am. Compl. ¶ 381.)

42. During this time, CSL continued to represent that it was ABA accredited and in full compliance with all ABA standards without informing prospective or current students about the ABA's findings. (*See* Third Am. Compl. ¶¶ 4–6.)

43. On November 14, 2016, the ABA issued a fourth, and final, decision finding that CSL was not in compliance with the standards identified above, that the issues of noncompliance had been substantial and persistent, and that CSL's "plans for bringing itself into compliance with the [s]tandards have not been proven effective or reliable." (Third Am. Compl. ¶ 382.) The ABA placed CSL on probation effective immediately and ordered remedial actions be taken, including public disclosure of the ABA's decision. (Third Am. Compl. ¶ 382.)

44. On December 19, 2016, the United States Department of Education denied CSL's Recertification Application to Participate in the Federal Student Financial Assistance Program based, in part, on its findings that CSL had improperly misrepresented its accreditation status and bar passage rates to its students. (*See* Third Am. Compl. ¶¶ 383–88; Pls.' Mem. Law Opp'n Sterling Defs.' Mot. Dismiss Ex. A, ECF No. 53.2.)

45. CSL closed in the fall of 2017, after the Actions were initiated.

46. Plaintiffs do not dispute, and the Court finds, that the Sterling Defendants are not incorporated in North Carolina; do not have a principal place of

business in North Carolina; do not hold equity in any companies incorporated or headquartered in North Carolina; and do not have property, offices, employees, or bank accounts in North Carolina. (Epstein Aff. ¶¶ 4, 6, 13.)

47. Plaintiffs nevertheless assert, and the Sterling Defendants deny, that the Sterling Defendants exercised sufficient control over CSL such that they purposefully conducted business in North Carolina and the Court can and should exercise specific jurisdiction. The Court addresses these contested assertions below.

## V.     LEGAL STANDARD

48. A North Carolina court has personal jurisdiction over a party if the exercise of such jurisdiction comports with both the North Carolina long arm statute and constitutional due process considerations. *See Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986). Because North Carolina's long arm statute permits jurisdiction to the extent allowed by due process, "the question of statutory authority collapses into the question of whether [the defendant] has the minimum contacts with North Carolina necessary to meet the requirements of due process." *A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 259, 625 S.E.2d 894, 899, (2006) (alteration in original) (quoting *Sherlock v. Sherlock*, 143 N.C. App. 300, 303, 545 S.E.2d 757, 760 (2001)).

49. "For a court to exercise personal jurisdiction over a non-resident defendant, due process requires that the defendant 'have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Worley v. Moore*, No. 15 CVS

1316, 2017 NCBC LEXIS 15, at \*20 (N.C. Super. Ct. Feb. 28, 2017) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To assess whether a defendant has sufficient minimum contacts with the state "the court looks at several factors, including: (1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with those contacts; (4) the interest of the forum state; and (5) the convenience to the parties." *A.R. Haire, Inc.*, 176 N.C. App. at 260, 625 S.E.2d at 899.

50. "Specific jurisdiction exists when a defendant purposefully directed his activities toward the forum and the cause of action arises out of or relates to such activities." *Worley*, 2017 NCBC LEXIS 15, at \*21. A defendant should "not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity' of another party or a third person." *Hiwassee Stables, Inc. v. Cunningham*, 135 N.C. App. 24, 28–29, 519 S.E.2d 317, 321 (1999) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

51. The Court must be cautious not to exercise jurisdiction over a non-resident entity solely based on acts of another entity without "proof that the businesses are parts of the same whole." *Wyatt v. Walt Disney World, Co.*, 151 N.C. App. 158, 168, 565 S.E.2d 705, 711 (2002). Without a clear evidentiary basis to do so, the Court cannot simply impute actions of a resident corporate defendant to another non-resident corporate defendant. *See Worley*, 2017 NCBC LEXIS 15, at \*28. "Each defendant's contacts with the forum State must be assessed individually." *Brown v.*

*Refuel Am., Inc.*, 186 N.C. App. 631, 638, 652 S.E.2d 389, 394 (2007) (quoting *Calder v. Jones*, 465 U.S. 783, 790 (1984)).

52. A plaintiff has the burden of demonstrating jurisdiction, and once jurisdiction is challenged, the "allegations [in the complaint] can no longer be taken as true or controlling." *Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d 179, 182 (2005) (alteration in original) (quoting *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615–16, 532 S.E.2d 215, 218 (2000)); *see Miller v. Szilagyi*, 221 N.C. App. 79, 85, 726 S.E.2d 873, 879 (2012); *Soma Tech., Inc. v. Dalamagas*, No. 16 CVS 11100, 2017 NCBC LEXIS 26, at *8 (N.C. Super. Ct. Mar. 24, 2017). Particularly where the defendant supports a jurisdictional challenge with competent evidence, "the plaintiff must respond by affidavit or otherwise, setting forth specific facts showing that the court has personal jurisdiction." *Worley*, 2017 NCBC LEXIS 15, at *19.

53. When the facts are contested, the Court must "act as a fact-finder," assess the weight and sufficiency of the evidence, and "decide the question of personal jurisdiction by a preponderance of the evidence." *Parker v. Town of Erwin*, 243 N.C. App. 84, 97, 776 S.E.2d 710, 722 (2015) (quoting *Deer Corp. v. Carter*, 177 N.C. App. 314, 322, 629 S.E.2d 159, 166 (2006)).

## VI. ANALYSIS

54. Notwithstanding the uncontested facts summarized above, which demonstrate that the Sterling Defendants have no physical presence in North Carolina, Plaintiffs contend that the Court can exercise specific jurisdiction over the

Sterling Defendants because they are sufficiently involved in CSL's operations and decision making. The Sterling Defendants respond that their connection to North Carolina and CSL is too remote to subject them to the Court's specific jurisdiction, because their connection is limited to "their membership in a Delaware LLC that is an additional two corporate levels removed from [the] subsidiary conducting business in North Carolina." (Mem. Law Supp. Sterling Defs.' Mot. Dismiss 21, ECF No. 30.) Plaintiffs rely on three categories of evidence that they contend support a finding that the Sterling Defendants exercised sufficient control over CSL and acts occurring in North Carolina to subject them to personal jurisdiction.

55. First, Plaintiffs contend that CSL's North Carolina Application for Certificate of Authority for Limited Liability Company ("CSL Application"), filed on October 11, 2006, and signed by Inatome, adequately connects the Sterling Defendants to CSL and North Carolina. (*See* Pls.' Mem. Law Opp'n Sterling Defs.' Mot. Dismiss 18–19, ECF No. 53; Pls.' Mem. Law Opp'n Sterling Defs.' Mot. Dismiss Ex. N, ECF No. 53.5.) The CSL Application does not make any reference to the Sterling Defendants. Plaintiffs instead rely on their contention that Inatome was, at some unspecified time, the Managing Director of Sterling Partners. (*See* Pls.' Mem. Law Opp'n Sterling Defs.' Mot. Dismiss Ex. P, at 66.) The Court has reviewed the evidence and finds that it does not indicate or suggest that Inatome was the Managing Director of the Sterling Defendants. Plaintiffs have offered no evidence that supports an inference that Inatome signed the CSL Application on behalf of either Sterling Partners or the Sterling Defendants. To the contrary, the CSL

Application reflects, and the Court finds, that Inatome signed the CSL Application as President of Charlotte School of Law B Corp., Inc. (*See* Pls.' Mem. Law Opp'n Sterling Defs.' Mot. Dismiss Ex. N, at 2.) The Court finds no evidentiary support for Plaintiffs' assertion that the address on the CSL Application was a former address of the Sterling Defendants. But even if the Court assumes Plaintiffs' assertions to be true, those facts are too attenuated to support a finding that the Sterling Defendants purposely availed themselves of the opportunity to do business in North Carolina.

56. The Court concludes that the CSL Application does not provide a basis to allow this Court to exercise specific jurisdiction over the Sterling Defendants.

57. Second, Plaintiffs offer the broad conclusory statement that the Sterling Defendants "make[ ] all of the 'critical decisions' for the companies [they] own[ ]." (Pls.' Mem. Law Opp'n Sterling Defs.' Mot. Dismiss 18.) Plaintiffs attempt to support this assertion with articles in which Sterling Partners' general counsel describes the partnership's general involvement in the companies in which it invests. (*See* Pls.' Mem. Law Opp'n Sterling Defs.' Mot. Dismiss Ex. L, at 1, ECF No. 53.3; Pls.' Mem. Law Opp'n Sterling Defs.' Mot. Dismiss Ex. M, ECF No. 53.4.) The Sterling Defendants do not contest that SFM has provided Holding "with consulting and financial services regarding long-term financing and strategic goals." (Epstein Aff. ¶ 7.) But SFM and the Sterling Defendants specifically deny any involvement in "the day-to-day management of CSL, marketing of CSL, accreditation issues at CSL, or the eligibility of CSL students to receive Title IV funds," (Epstein Aff. ¶ 7), and Plaintiffs have offered no contrary evidence.

58. The Court finds and concludes that the articles described above do not provide a basis to exercise specific jurisdiction over the Sterling Defendants.

59. Third, Plaintiffs rely on Sterling Partners' website that contained statements referring to CSL. Sterling Partners' website described InfiLaw as "a consortium of law schools accredited by the American Bar Association ("ABA")–including Florida Coastal School of Law, Phoenix School of Law, and Charlotte School of Law–constituting half of the nation's ABA accredited for-profit law schools." (Pls.' Mem. Law Opp'n Sterling Defs.' Mot. Dismiss Ex. O, at 2, ECF No. 53.6.)

60. The Court finds and concludes that the website description is no more than a brief profile of one of the many companies in Sterling Partners' investment portfolio. This posting does not provide a sufficient basis to establish, by a preponderance of the evidence, that the Sterling Defendants conducted business in North Carolina or exercised sufficient control over CSL's operations to subject them to specific personal jurisdiction.

61. In sum, the Plaintiffs have failed to present evidence to sufficiently rebut Mr. Epstein's sworn testimony that the Sterling Defendants do not have an ownership interest in CSL and are not involved in CSL's management. (*See* Epstein Aff. ¶¶ 6–7.) Thus, the Court finds that the Sterling Defendants have not purposefully directed activities toward North Carolina, meaning the exercise of specific jurisdiction over the Sterling Defendants would be inconsistent with due process. *See Wyatt*, 151 N.C. App. at 165, 565 S.E.2d at 710.

62. The Court has considered Plaintiffs' request for jurisdictional discovery from the Sterling Defendants and concludes that no such jurisdictional discovery is needed or appropriate. "Whether to grant jurisdictional discovery is within the Court's discretion, but the party seeking discovery 'must offer more than speculation or conclusory assertions about contacts with a forum state.'" *Azure Dolphin, LLC v. Barton*, No. 16 CVS 7622, 2017 NCBC LEXIS 90, at *12 (N.C. Super. Ct. Oct. 2, 2017) (quoting *Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 686 (M.D.N.C. 2011)). Plaintiffs have not provided adequate facts to support their request for jurisdictional discovery.

63. Having concluded that it does not have jurisdiction over the Sterling Defendants, the Court does not address the Sterling Defendants' additional contention that the Actions against them should be dismissed for failure to state a claim.

## VII. CONCLUSION

64. For the foregoing reasons, the Motion is GRANTED pursuant to Rule 12(b)(2), and all the claims against the Sterling Defendants in the Actions are DISMISSED. The Motion pursuant to Rule 12(b)(6) is MOOT.


IT IS SO ORDERED, this the 14th day of February, 2018.


/s/ James L. Gale
_____
James L. Gale
Chief Business Court Judge