Burgess v. Vitola, 2008 NCBC 4

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| | SUPERIOR COURT DIVISION |
| COUNTY OF BUNCOMBE | 07 CVS 4679 |

CHARLES BURGESS,

    Plaintiff,

  v.

RALPH VITOLA, JOHN D. McMAHON,
MICHAEL HANSON, ANTHONY
McLAUGHIN,  GEORGE E. FRANCISCO,
JOHN CAUDILL, EDWARD P.
SHAUGHNESSY, LARRY E. BUCHANAN,
KIM MICHAEL CULLEN, PHILLIP
DEBERARD, DAVID P. HILL, WILLIAM
WEST, DDS, STEPHANIE McGANN,
CRAIG Q. ADAMS, EDWARD J. LEE,
NEAL VAVRA, MARVIN SONNE, JASON
MORGAN, JEFFREY INGBER, MICHAEL
SINGLETON, MONA ENTEZAM,
KATHLEEN ABATE, THOMAS D.
JACKSON, JAY AUGENSTEIN, KISHOR
KULKARNI, RICO GATTI, JR., DAVID W.
SINGER, KENNETH FORDHAM, and
KIRK WILKIE,

    Defendants.

ORDER & OPINION

*Charles Burgess, Plaintiff, pro se.*

*Nexsen Pruet, LLC, by Travis Wheeler for Defendants Thomas D. Jackson, Marvin Sonne, and Jeffrey Ingber.*

*Templeton & Raynor, P.A. by Kenneth R. Raynor for Defendants Craig Q. Adams, Larry E. Buchanan, Ricco Gatti, Jr., Kishor Kulkarni, Kim Michael Cullen, Philip Deberard, Michael Hanson, Edward P. Shaughnessy, Michael Singleton, and Ralph Vitola.*

*Long, Parker, Warren & Jones, P.A. by Philip S. Anderson for Defendant Kathleen Abate.*

*McAngus, Goudelock & Courie, PLLC by John E. Spainhour for Defendants Anthony McLaughin and Neal Vavra.*

*David P. Hill, Defendant, pro se.*

*Biggers & Associates, PLLC by William Biggers for Defendant William West.*

Diaz, Judge.

I.

STATEMENT OF THE CASE

{1}    The Court has before it several motions.

{2}    Defendants Jeffrey Ingber; Larry E. Buchanan; Kim Michael Cullen; Philip Deberard; Ricco Gatti, Jr.; Michael Hanson; Kishor Kulkarni; Edward Shaughnessy; Michael Singleton; Ralph M. Vitola; Thomas D. Jackson; Marvin Sonne; Kathleen Abate; Neal Vavra; David P. Hill; and William West (collectively the "Moving Defendants") have moved to dismiss Plaintiff Charles Burgess' ("Burgess") Complaint pursuant to Rule 12(b) of the North Carolina Rules of Civil Procedure.

{3}    Specifically, Moving Defendants allege that this Court lacks personal jurisdiction over them.  Some Moving Defendants also allege that Burgess has not properly served them with process; others allege that Burgess has failed to state a valid claim for relief.

{4}    Burgess has moved to strike portions of Jeffrey Ingber's Brief in support of his Motion to Dismiss.

{5}    Burgess has also moved to stay resolution of Moving Defendants' Motions to Dismiss while he conducts discovery on the issue of personal jurisdiction.

{6}    Finally, Defendants Jeffrey Ingber, Thomas D. Jackson, Marvin Sonne, and David Hill have moved for sanctions pursuant to Rule 11 of the North Carolina Rules of Civil Procedure.

{7}     Pursuant to Rule 15.4 of the General Rules of Practice and Procedure for the North Carolina Business Court, the Court decides the Motions without a hearing.

{8}     After considering the Court file, the motions, briefs, and submissions of the parties, and for the reasons set forth below, the Court (1) **GRANTS** the Motions to Dismiss because it does not have personal jurisdiction over Moving Defendants; (2) does not address the alternative bases for dismissal set forth in the Motions to Dismiss; (3) **DENIES** Burgess' Motion to Strike as to Jeffrey Ingber; (4) **DENIES** Burgess' Motion to Stay; and (5) **DENIES** the Motions of Jeffrey Ingber, Marvin Sonne, Thomas D. Jackson, and David Hill for Rule 11 sanctions.

II.

THE FACTS

A.

SUMMARY OF PLAINTIFF'S CLAIMS

{9}     Burgess filed his *pro se* Complaint on 19 September 2007.

{10}    The unverified Complaint alleges that Defendants "collectively and individually have hired or employed some Internet firm" to plant "a bug or virus or worm" on Burgess' computer, thus damaging the computer and invading his property. (Compl. ¶¶ 31–32.)

{11}    More accurately, however (as demonstrated by Exhibit 1 to Burgess' 15 November 2007 Response to Ingber's Motion to Dismiss)[1], Burgess' chief complaint is that the commercial websites of the various Defendants, all of whom operate law

---

[1] Burgess' Response also incorporates a Motion to Strike portions of Jeffrey Ingber's Brief in support of his Motion to Dismiss.  The Court **DENIES** Burgess' Motion to Strike.

or dental practices well outside of North Carolina, have found their way onto his computer without (Burgess asserts) his authority or permission.[2]


## B.
## THE MOVING DEFENDANTS
### 1.
### JEFFREY INGBER

{12}   Jeffrey Ingber ("Ingber") is a dentist.  (Ingber Aff. ¶ 1.)  He lives in Michigan and his practice is located in Pontiac, Michigan.  (Ingber Aff. ¶ 1.)

{13}   Ingber has never met, spoken with, or otherwise solicited Burgess. (Ingber Aff. ¶ 3.)

{14}   Ingber is not licensed to practice dentistry in North Carolina.  (Ingber Aff. ¶ 5.)

{15}    Ingber has never advertised or solicited patients from outside of Michigan "because such efforts would result in few, if any additional patients." (Ingber Aff. ¶ 4.)

{16}   Ingber has never hired an "'Internet firm' to advertise [his] practice on-line or for any other purpose."  (Ingber Aff. ¶ 6.)

### 2.
### LARRY E. BUCHANAN

{17}   Larry E. Buchanan ("Buchanan") is an attorney.  (Buchanan Aff. ¶ 2.) He lives in Florida and the firm with which he practices has offices in Stuart and Port St. Lucie, Florida.  (Buchanan Aff. ¶¶ 2–3.)

---

[2] On 25 January 2008, Burgess submitted a video purporting to show his computer browser veering off unwillingly "to websites that whomever [sic] planted the bug, virus, or worm wants the Plaintiff to view."  (25 Jan. 2008 Proffer 1.)  Some of the Defendants have offered evidence suggesting that Burgess may have staged this result by manipulating search terms in his computer's Google and web browser search windows.  (Queen Aff. ¶¶ 4–5.)  For purposes of these Motions, however, and even though the video submitted by Burgess is not as compelling as he asserts, the Court accepts Burgess' allegations as true.

{18}    Buchanan has never met, spoken with, or otherwise solicited Burgess. (Buchanan Aff. ¶ 12.)

{19}    Buchanan is not licensed to practice law in North Carolina, nor has he ever earned fees from practicing law in this state. (Buchanan Aff. ¶¶ 4– 5.)

{20}    Buchanan's firm contracts with Bell South to place local advertisements for the firm, including a passive listing of the firm's ad on Bell South's www.yellowbook.com website. (Buchanan Aff. ¶¶ 7, 9.) In addition, Buchanan's firm maintains two passive Internet websites, www.crarybuchanan.com and www.protecttheinjured.com. (Buchanan Aff. ¶ 9.)

{21}    Neither Buchanan nor his firm actively advertise in North Carolina, through the Internet or otherwise. (Buchanan Aff. ¶ 9.)

3.

KIM MICHAEL CULLEN

{22}    Kim Michael Cullen ("Cullen") is an attorney. (Cullen Aff. ¶ 3.) He lives in Florida and operates a law firm in Orlando, Florida. (Cullen Aff. ¶¶ 2–3.)

{23}    Cullen does not practice law in North Carolina, nor has he ever earned fees from practicing law in North Carolina. (Cullen Aff. ¶ 4.)

{24}    Although Cullen's firm maintains a passive Internet website, Cullen and his firm do not actively advertise in North Carolina, through the Internet or otherwise. (Cullen Aff. ¶¶ 4, 8.)

4.

PHILLIP DEBERARD

{25}    Phillip Deberard ("Deberard") is an attorney. (Deberard Aff. ¶ 3.)[3] He lives in Florida and operates a two-attorney law firm with offices in Stuart and Okeechobee, Florida. (Deberard Aff. ¶¶ 2–3.)

{26}    Deberard is not licensed to practice law in North Carolina, nor has he ever earned fees from practicing law in this state. (Deberard Aff. ¶ 4.)

---

[3] Deberard's affidavit identifies him as Phillip Deberard, III. The caption of the Complaint, however, does not make this distinction. The Court assumes that the proper Defendant is before it.

{27} Deberard's firm contracts with Bell South to place local advertisements for the firm, including a passive listing of the firm's ad on Bell South's "Yellowpages.com" website. (Deberard Aff. ¶ 6.) In addition, Deberard's firm maintains a passive Internet website, www.flainjurylawyer.com, and has hired an outside company to help local customers more easily find its website through directional, non-invasive procedures, meaning that the firm's website must be specifically searched for and clicked on. (Deberard Aff. ¶¶ 6–7.)

{28} Neither Deberard nor his firm actively advertise in North Carolina, through the Internet or otherwise. (Deberard Aff. ¶ 4.)

5.

### RICCO GATTI, JR.

{29} Ricco Gatti, Jr. ("Gatti") is a retired attorney. (Gatti Aff. ¶ 3.) He lives in Tennessee and was formerly a partner with a firm in Memphis, Tennessee. (Gatti Aff. ¶¶ 2–3.) He remains of counsel to the firm, but has not visited the firm's office for over a year. (Gatti Aff. ¶ 3.)

{30} Gatti is not licensed to practice law in North Carolina, nor has he ever earned fees from practicing law in this state. (Gatti Aff. ¶ 4.)

{31} Gatti's former firm contracts with AT&T to place local advertisements for the firm, including a passive listing of the firm's ad on AT&T's "Yellowpages.com" website. (Gatti Aff. ¶ 6.) In addition, Gatti's former firm maintains a passive Internet website. (Gatti Aff. ¶ 7.)

{32} Neither Gatti nor his former firm actively advertise in North Carolina, through the Internet or otherwise. (Gatti Aff. ¶ 4.)

6.

### MICHAEL HANSON

{33} Michael Hanson ("Hanson") is an attorney. (Hanson Aff. ¶ 3.) He lives in Florida and operates a two-attorney law firm with his brother in Orlando, Florida. (Hanson Aff. ¶¶ 2–3.)

{34}    Hanson is not licensed to practice law in North Carolina, nor has he ever earned fees from practicing law in this state.  (Hanson Aff. ¶ 4.)

{35}    Hanson's firm contracts with Bell South to place local advertisements for the firm, including a passive listing of the firm's ad on Bell South's "Yellowbook.com" website.  (Hanson Aff. ¶ 7.)  In addition, Hanson's firm maintains a passive Internet website.  (Hanson Aff. ¶ 8.)

{36}    Neither Hanson nor his firm actively advertise in North Carolina, through the Internet or otherwise.  (Hanson Aff. ¶ 4.)

7.

KISHOR KULKARNI

{37}    Kishor Kulkarni ("Kulkarni") is a dentist.  (Kulkarni Aff. ¶ 3.)  He lives in New Jersey and operates a dental clinic with offices in New Brunswick and Edison, New Jersey.  (Kulkarni Aff. ¶¶ 2–3.)

{38}    Kulkarni is not licensed to practice dentistry in North Carolina. (Kulkarni Aff. ¶ 4.)  He has never performed any dental work or received any fees from performing dental work in North Carolina.  (Kulkarni Aff. ¶ 4.)

{39}    Kulkarni's firm contracts with Verizon, Yellow Book, and Yellow Pages to place local advertisements for the firm, including a passive listing of the firm's ad on the Yellow Pages' website.  (Kulkarni Aff. ¶ 6.)  In addition, Kulkarni's firm maintains a passive Internet website and has hired an outside company to help local customers more easily find its website through directional, non-invasive procedures, meaning that the firm's website must be specifically searched for and clicked on.  (Kulkarni Aff. ¶¶ 6–7.)

{40}    Neither Kulkarni nor his firm actively advertise in North Carolina, through the Internet or otherwise.  (Kulkarni Aff. ¶ 4.)

8.

EDWARD SHAUGHNESSY

{41}    Edward Shaughnessy ("Shaughnessy") is an attorney. (Shaughnessy Aff. ¶ 3.) He lives in Pennsylvania and operates a law firm in Easton, Pennsylvania. (Shaughnessy Aff. ¶¶ 2–3.)

{42}    Shaughnessy does not practice law in North Carolina, nor has he ever earned fees from practicing law in this state. (Shaughnessy Aff. ¶ 4.)

{43}    Although Shaughnessy's firm maintains a passive Internet website, Shaughnessy and his firm do not actively advertise in North Carolina, through the Internet or otherwise. (Shaughnessy Aff. ¶¶ 4, 7.)

9.

MICHAEL SINGLETON

{44}    Michael Singleton ("Singleton") is a dentist. (Singleton Aff. ¶ 3.) He lives in Michigan and operates a dental clinic in Saline, Michigan. (Singleton Aff. ¶¶ 2–3.)

{45}    Singleton is not licensed to practice dentistry in North Carolina. (Singleton Aff. ¶ 4.) He has never performed any dental work or received any fees from performing dental work in North Carolina. (Singleton Aff. ¶ 4.)

{46}    Singleton's clinic contracts with AT&T to place local advertisements for the firm, including a passive listing of the firm's ad on AT&T's "Yellowpages.com" website. (Singleton Aff. ¶ 6.) In addition, Singleton's clinic maintains a passive Internet website and uses AT&T to place banner ads and sponsor links on search engines like Google or Yahoo. (Singleton Aff. ¶¶ 6–7.) However, all of these Internet advertising efforts are purely directional and non-invasive, meaning that the clinic's website must be specifically searched for and clicked on. (Singleton Aff. ¶ 6.)

{47}    Neither Singleton nor his clinic actively advertise in North Carolina, through the Internet or otherwise. (Singleton Aff. ¶ 4.)

10.

## RALPH M. VITOLA

{48} Ralph M. Vitola ("Vitola") is an attorney. (Vitola Aff. ¶ 3.) He lives in Florida and operates a law firm in Brooksville, Florida. (Vitola Aff. ¶¶ 2–3.)

{49} Vitola does not practice law in North Carolina, nor has he ever earned fees from practicing law in this state. (Vitola Aff. ¶ 4.)

{50} Vitola's firm contracts with Bell South to place local advertisements for the firm, including a passive listing of the firm's ad on Bell South's "Yellowpages.com" website. (Vitola Aff. ¶¶ 6.) In addition, Vitola's firm maintains a passive Internet website and has hired an outside company to help local customers more easily find its website through directional, non-invasive procedures, meaning that the firm's website must be specifically searched for and clicked on. (Vitola Aff. ¶¶ 6–7.)

{51} Neither Vitola nor his firm actively advertise in North Carolina, through the Internet or otherwise. (Vitola Aff. ¶ 4.)

11.

## THOMAS D. JACKSON

{52} Thomas D. Jackson ("Jackson") is a dentist. (Jackson Aff. ¶ 1.) He lives in Michigan and his practice is located in Lapeer, Michigan. (Jackson Aff. ¶ 1.)

{53} Jackson has never met, spoken with, or otherwise solicited Burgess. (Jackson Aff. ¶ 3.)

{54} Jackson is not licensed to practice dentistry in North Carolina. (Jackson Aff. ¶ 5.)

{55} Jackson has never advertised or solicited patients from outside of Michigan "because such efforts would result in few, if any additional patients." (Jackson Aff. ¶ 4.)

{56} Jackson has never hired an "'Internet firm' to advertise [his] practice on-line or for any other purpose." (Jackson Aff. ¶ 6.)

12.

## MARVIN SONNE

{57}   Marvin Sonne ("Sonne") is a dentist.  (Sonne Aff. ¶ 1.)  He lives in Michigan and his practice is located in Trenton, Michigan.  (Sonne Aff. ¶ 1.)

{58}   Sonne has never met, spoken with, or otherwise solicited Burgess.  (Sonne Aff. ¶ 3.)

{59}   Sonne is not licensed to practice dentistry in North Carolina.  (Sonne Aff. ¶ 5.)

{60}   Sonne has never advertised or solicited patients from outside of Michigan "because such efforts would result in few, if any additional patients."  (Sonne Aff. ¶ 4.)

{61}   Sonne has never hired an "'Internet firm' to advertise [his] practice online or for any other purpose."  (Sonne Aff. ¶ 6.)

13.

KATHLEEN ABATE

{62}   Kathleen Abate ("Abate") is a dentist.  (Abate Aff. ¶ 4.)  She lives in Michigan and is employed by a dental practice located in Detroit, Michigan.  (Abate Aff. ¶¶ 2–5.)

{63}   Abate is not licensed to practice dentistry in North Carolina.  (Abate Aff. ¶ 4.)  She has never performed any dental work or received any fees from performing dental work in North Carolina.  (Abate Aff. ¶¶ 4, 6.)

{64}   Although her employer contracts with AT&T to maintain a passive Internet website, www.mfamilydental.com, the overwhelming majority of its clients reside in Detroit, Michigan, and therefore neither Abate nor her employer directly advertise in North Carolina.  (Abate Aff. ¶¶ 7–8, 10–12.)

14.

NEAL VAVRA

{65}   Neal Vavra ("Vavra") is a dentist.  (Vavra Aff. ¶ 4.)  He lives in California and owns and operates a dental practice located in California.  (Vavra Aff. ¶¶ 2, 4.)

{66}   Vavra has never met, spoken with, or otherwise solicited Burgess.  (Vavra Aff. ¶ 11.)

{67}    Neither Vavra nor any one in his office is licensed to practice dentistry in North Carolina.  (Vavra Aff. ¶ 5.)

{68}    Although his office previously maintained a passive Internet website, Vavra never expected to obtain business from North Carolina residents, and therefore never directed his advertising efforts toward anyone living in North Carolina.  (Vavra Aff. ¶¶ 10, 12, 14.)

## 15.

## DAVID P. HILL

{69}    David P. Hill ("Hill") is an attorney.  (Hill Aff. ¶ 4.)  He lives in Florida and is the sole owner and proprietor of a law office in Florida.  (Hill Aff. ¶¶ 2, 4.)

{70}    Hill has never met, spoken with, or otherwise solicited Burgess.  (Hill Aff. ¶ 16.)

{71}    Hill does not practice law in North Carolina, nor has he ever earned fees from practicing law in this state.  (Hill Aff. ¶ 5.)

{72}    Although Hill's firm maintains a passive Internet website, Hill and his firm do not actively solicit "business in the state of North Carolina by mail, telephone, commercial bulk email, or otherwise."  (Hill Aff. ¶¶ 11, 14.)

## 16.

## WILLIAM WEST

{73}    William West ("West") is a dentist.  (West Aff. ¶ 4.)  He lives in New York and is the sole owner and proprietor of a dental practice in New York City, New York.  (West Aff. ¶¶ 2, 5.)

{74}    West has never met, spoken with, or otherwise solicited Burgess.  (West Aff. ¶ 16.)

{75}    West is only licensed to practice dentistry in New York.  (West Aff. ¶ 4.)  He has never received compensation for services rendered in North Carolina or for services rendered to anyone residing in North Carolina.  (West Aff. ¶ 6.)

{76}    Although West does maintain a passive Internet website hosted by Yellowpages.com, he never had any intention of doing business with a North

Carolina resident, and therefore does not actively solicit business from anyone living in North Carolina. (West Aff. ¶¶ 9, 11.)

## III.
## CONTENTIONS OF THE PARTIES

{77} Moving Defendants contend the Court has no basis for asserting personal jurisdiction over them.[4] Several Moving Defendants (Ingber, Sonne, Jackson, and Hill) also argue that Burgess should be sanctioned pursuant to Rule 11 of the North Carolina Rules of Civil Procedure for filing a frivolous lawsuit.

{78} Burgess responds that his Complaint sufficiently alleges that Moving Defendants "used an agent or company or business to place these ads on his computer" and that "[t]his allegation alone, unless refuted by believable evidence, satisfies the requirements of N.C.G.S. 1-75.4 (4)(a)" with respect to personal jurisdiction. (Burgess' 15 Nov. 2007 Resp. Ingber Mot. Dismiss 3.)

{79} Burgess has also requested that certain portions of Defendant Ingber's Brief in Support of his Motion to Dismiss be stricken and that the Court stay any ruling on Moving Defendants' Motions to Dismiss while he conducts discovery on the issue of personal jurisdiction.

## IV.
## LEGAL PRINCIPLES

{80} North Carolina courts employ a two-step analysis to determine whether they have personal jurisdiction over a non-resident defendant: "First, the transaction must fall within the language of the State's 'long-arm' statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986) (citation omitted).

---

[4]Some Moving Defendants also allege that Burgess did not properly serve them with process; others allege that Burgess has failed to allege a valid claim against them. Because the Court concludes that it lacks personal jurisdiction over Moving Defendants, it does not address these alternative arguments for dismissal.

{81}    Our long-arm statute extends to North Carolina courts "the full jurisdictional powers permissible under federal due process." *Dillon v. Numismatic Funding Corp.,* 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977).  In most cases then, the personal jurisdiction inquiry collapses into an analysis of due process.  *Brown v. Refuel Am., Inc.,* 652 S.E.2d 389, 391 (N.C. Ct. App. 2007).

{82}    Once a defendant challenges personal jurisdiction, the plaintiff has the burden of proving *prima facie* that a basis for jurisdiction exists.  *Wyatt v. Walt Disney World, Co.,* 151 N.C. App. 158, 162, 565 S.E.2d 705, 708 (2002) (citation omitted).  Where the allegations of a plaintiff's complaint meet his initial burden of proving the existence of jurisdiction, and where the defendant does not contradict such allegations, they are accepted as true and deemed controlling.  *Id.* at 163, 565 S.E.2d at 708.

{83}    However, when a defendant supplements his motion with affidavits or other supporting evidence, the allegations of the plaintiff's complaint "'can no longer be taken as true or controlling and [the plaintiff] cannot rest on the allegations of the complaint,' but must respond 'by affidavit or otherwise . . . setting forth specific facts showing that the court has jurisdiction.'"  *Id.* (quoting *Bruggeman v. Meditrust Acquisition Co.,* 138 N.C. App. 612, 615–16, 532 S.E.2d 215, 218 (2000)).

{84}    To comply with due process, a plaintiff must show minimum contacts between the non-resident defendant and the forum such that allowing the suit does not offend "traditional notions of fair play and substantial justice."  *Tom Togs,* 318 N.C. at 365, 348 S.E.2d at 786 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

{85}    "When a controversy is related to or 'arises out of' a defendant's contacts with the forum, [which courts characterize as 'specific jurisdiction'] . . . a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of *in personam* jurisdiction."[5]  *Helicopteros Nacionales de Colombia, S.A.*

---

[5] Courts may also exercise "general jurisdiction" over a defendant, meaning that a defendant may be required to appear and defend lawsuits that are unrelated to his activities in a state, so long as there are sufficient "'continuous and systematic contacts' between defendant and the forum state."

*v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

{86}    A plaintiff meets his burden on this issue if he proves that a "defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Havey v. Valentine,* 172 N.C. App. 812, 815, 616 S.E.2d 642, 647 (2005) *(quoting Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)). Put another way, "there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Tom Togs,* 318 N.C. at 365, 348 S.E.2d at 786.

{87}    Although contacts that are "isolated" or "sporadic" may support personal jurisdiction if they create a "substantial connection" with the forum, the contacts must be more than random, fortuitous, or attenuated. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–75 (1985). Moreover, while a defendant need not be physically present within the forum, the evidence must show that his efforts were purposefully directed toward forum residents. *Id.* at 476.

V.

ANALYSIS

A.

PERSONAL JURISDICTION

{88}    Moving Defendants have challenged personal jurisdiction by motion and filed supporting affidavits specifically denying any contacts or activity involving Burgess or North Carolina that would subject them to this Court's jurisdiction.

{89}    In response to this evidence, Burgess points to the unsworn allegations of his Complaint[6] wherein he asserts that Moving Defendants employed an agent to

---

*Replacements, Ltd. v. Midwesterling,* 133 N.C. App. 139, 145, 515 S.E.2d 46, 51 (1999) (quoting *Fraser v. Littlejohn,* 96 N.C. App. 377, 383, 386 S.E.2d 230, 234 (1989)).

[6] Burgess asserts that his Complaint is sworn, but the copy e-filed with the Court shows otherwise.

place unsolicited advertisements on his computer.  (Burgess' 15 Nov. 2007 Resp. Ingber Mot. Dismiss 3.)

{90}    Burgess has not met his burden of responding to Moving Defendants' affidavits with competent evidence setting forth facts supporting the Court's exercise of personal jurisdiction.  Even considering the unsworn allegations of Burgess' Complaint, however, they are insufficient to require Moving Defendants to defend this lawsuit in North Carolina.

{91}    Burgess' statutory basis for haling Moving Defendants before this Court is section 1-75.4(4) of the North Carolina General Statutes, which allows the Court to assert jurisdiction over a party who commits an act outside of North Carolina that damages a plaintiff in this state.  To satisfy this ground for personal jurisdiction, however, Burgess also would need to show that:

> (a) Solicitation or services activities were carried on within this State by or on behalf of the defendant;
>
> (b) Products, materials or thing [sic] processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade; or
>
> (c) Unsolicited bulk commercial electronic mail was sent into or within this State by the defendant using a computer, computer network, or the computer services of an electronic mail service provider in contravention of the authority granted by or in violation of the policies set by the electronic mail service provider.

N.C. Gen. Stat. § 1-75.4(4) (2007).

{92}    Burgess apparently concedes that the last two sub-sections of this provision do not apply (Burgess' 15 Nov. 2007 Resp. Ingber Mot. Dismiss 3), and the facts of record do not show otherwise.

{93}    As to subsection (a), the only evidence regarding solicitation is Moving Defendants' affidavits wherein they deny soliciting North Carolina residents. Indeed, it makes absolutely no sense that Moving Defendants, all of whom operate law or dental practices in states far removed from North Carolina, would have any

interest in soliciting Burgess, or any other North Carolina resident. Thus, Burgess has failed to show a statutory ground for asserting personal jurisdiction in this case.

{94} Even if Burgess' allegations were sufficient to satisfy North Carolina's long-arm statute (and they are not), subjecting Moving Defendants to jurisdiction in this state would violate due process.

{95} Burgess' claims in this case spring from Moving Defendants' Internet-based marketing activities of their law or dental practices.

{96} The North Carolina Court of Appeals has quoted with approval the following standard for determining whether the existence and maintenance of an Internet website supports a trial court's exercise of personal jurisdiction:

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State.

*Havey*, 172 N.C. App. at 816–17, 616 S.E.2d at 647–48 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002)).

{97} In *Havey,* the plaintiffs (both North Carolina residents) purchased furniture from Stahler Furniture Company ("Stahler") while in Vermont. *Id.* at 813, 616 S.E.2d at 645. Stahler, in turn, contracted with the defendant trucking company to ship the furniture to plaintiffs' home in Raleigh, North Carolina. *Id.*

{98} During delivery of the shipment in Raleigh, a piece of furniture fell from the truck and injured one of the plaintiffs. *Id.* at 813, 616 S.E.2d 645–46. Plaintiffs sued the trucking company, who sought to join Stahler as a third-party defendant. *Id.* at 813, 616 S.E.2d at 646.

{99}    Stahler moved to dismiss for lack of personal jurisdiction. *Id.* The defendant trucking company responded that Stahler was amenable to personal jurisdiction, in part because "through the use of its website and catalog, [Stahler] holds itself out as a seller of furniture to residents of North Carolina [and has] deliberately availed itself of the privilege of conducting business in North Carolina." *Id.* at 816, 616 S.E.2d at 647.

{100}   The trial court denied Stahler's motion to dismiss, but the Court of Appeals reversed. *Id.* at 813, 616 S.E.2d at 645. Noting that (1) Stahler's website was merely informational and passive; (2) Stahler had not specifically targeted North Carolina residents; and (3) Stahler had not otherwise purposefully availed itself of the privilege of conducting activities in North Carolina, the Court of Appeals concluded that Stahler's website, standing alone, could not "provide a basis for an exercise of personal jurisdiction by North Carolina courts." *Id.* at 817, 616 S.E.2d at 648.

{101}   Here, the evidence of record shows that Moving Defendants' electronic activity (in the form of their websites and other Internet advertising efforts) was largely passive and certainly was not specifically targeted at North Carolina residents.

{102}   Moreover, that Burgess allegedly suffered injury in North Carolina is alone insufficient to confer personal jurisdiction over Moving Defendants, particularly where there is no evidence that Moving Defendants "aimed or directed" their conduct toward North Carolina. *Woods Int'l, Inc. v. McRoy,* 436 F. Supp. 2d 744, 749–50 (M.D.N.C. 2006); *see also ESAB Group, Inc., v. Centricut, Inc.,* 126 F.3d 617, 626 (4th Cir. 1997) ("Although the place that the plaintiff feels the alleged injury is plainly relevant to the inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld.").

{103}   In sum, because Burgess has not demonstrated that Moving Defendants purposefully directed their commercial activities toward him or any

other North Carolina resident, there is no statutory or constitutional basis for haling them into this Court to address Burgess' claims.

{104} Accordingly, the Court **GRANTS** Moving Defendants' Motions to Dismiss for lack of personal jurisdiction.

B.

MOTION TO STAY PENDING DISCOVERY

{105} On 15 January 2008, Burgess renewed an earlier request that the Court stay resolution of the pending motions to dismiss while he conducted discovery on the issue of personal jurisdiction. More specifically, Burgess sought a stay of the Court's ruling to "cement the agent's names and addresses that are working for these various Defendants." (Burgess' 15 Jan. 2008 Reply Den. Disc. 1.)

{106} The Court **DENIES** the Motion to Stay.

{107} In the first place, Burgess does not specify what, if any, discovery has been served on Moving Defendants that relates to personal jurisdiction, nor has he attached any discovery materials to his papers in opposition to Moving Defendants' Motions to Dismiss.

{108} To the extent Burgess is referring to a "First Set of Interrogatories" purportedly served on all Defendants on or about 19 October 2007 (Hanson Defs.' 21 Nov. 2007 Mot. Protective Order Ex. 1), Burgess has not asserted that Moving Defendants failed to respond to this discovery, nor does the Court file show that Burgess has moved to compel.

{109} To the extent Burgess is referring to a request for documents served on all Defendants on 23 January 2008, the Court concludes that a stay of discovery for the purpose of "cementing" the names, addresses, and related financial information of the agents providing Internet services to Moving Defendants is unnecessary.

{110} Even assuming such agents exist (and indeed, some Moving Defendants admit they retained third-parties to assist them with their Internet marketing activities), the evidence (and common sense) make it clear that Moving Defendants, all of whom operate law or dental practices in states far removed from

North Carolina, had no intention of targeting North Carolina residents as part of their Internet activities.

{111}  Accordingly, even if (as Burgess alleges) Moving Defendants' Internet web sites have managed to infiltrate his computer without his consent, requiring these parties to appear in North Carolina to defend claims resulting from such an incident would violate due process.

VI.

CONCLUSION

{112}  The Court **GRANTS** Moving Defendants' Motions to Dismiss for lack of personal jurisdiction, without prejudice to Burgess' right to pursue his claims elsewhere.

{113}  The Court does not address Moving Defendants' other bases for dismissal.

{114}  The Court **DENIES** Burgess' Motion to Strike as to Defendant Ingber.

{115}  The Court **DENIES** Burgess' Motion to Stay.

{116}  The Court **DENIES** the Motions of Defendants Ingber, Sonne, Jackson, and Hill for Rule 11 sanctions.[7]

**SO ORDERED**, this the 26th day of February, 2008.

---

[7] Defendants' Rule 11 Motion asserts that Plaintiff's claim is frivolous and fails to state a cognizable claim for relief under North Carolina law.  In *Burgess v. Am. Express Co.,* 2007 NCBC 15 ¶¶ 13–17 (N.C. Super. Ct. May 21, 2007), http://www.ncbusinesscourt.net/opinions/2007%20NCBC%2015.pdf, however, this Court determined that a similar suit filed by Burgess alleged a common law claim for trespass to chattels.  Accordingly, the Court declines to assess Rule 11 sanctions in this case.